REQUESTED BY: Senator Jim Jensen
You have requested an Attorney General's Opinion concerning the impact of the recent court decision in Hawaii regarding same-sex marriage, as well as the new federal Defense of Marriage Act, on possible legislation in Nebraska to prohibit same-sex marriages.[1]
[1] The use of the phrase "same-sex `marriage'" in this opinion is in no way intended to indicate that two persons of the same sex are capable of entering into a marriage relationship. See Op. Att'y Gen. No. 96025 (March 25, 1996) ("Marriage" can only occur between persons of the opposite sex); 1977-78 Rep. Att'y Gen. 170. (Op. No. 113, June 27, 1977).
In Op. Att'y Gen. No. 96025 (March 25, 1996), we addressed the issue of whether Nebraska would be required to recognize a same-sex marriage license obtained in the State of Hawaii. At that time, a lawsuit concerning same-sex marriage was still pending before a trial level court in Hawaii following remand by the Hawaii Supreme Court. See Baehr v. Lewin, 852 P.2d 44
(Hawaii 1993). On December 3, 1996, the trial court ruled that Hawaii could not refuse to grant licenses for same-sex marriages, thus creating the possibility that other states, including Nebraska, would have to honor same-sex "marriage" licenses obtained in Hawaii. See Op. Att'y Gen. No. 96025. However, on December 4, 1996, the Hawaii Attorney General's Office requested and obtained a stay of the trial court's decision pending appeal to the Hawaii Supreme Court. Therefore, the Nebraska Legislature should have time to consider legislation on this topic during the 1997 session. This opinion will discuss the Hawaii court decision and recently-enacted federal legislation to determine their impact on possible legislation in Nebraska concerning same-sex marriages.
Baehr v. Miike Decision
In Baehr v. Miike, No. 91-1394 (Cir. Ct. of Hawaii, Dec. 3, 1996) (1996 WL 694235), the court held that denial of marriage licenses to same-sex couples pursuant to HRS § 572-1 violated the constitutional rights of the plaintiffs. Specifically, the court held that Hawaii's marriage statute violated the equal protection clause of the Hawaii Constitution. The Court enjoined the Director of the Hawaii Department of Health from denying applications for marriage licenses to applicants of the same sex. Id. at 18. The court found that the State of Hawaii failed to "overcome the presumption that HRS § 571-1 is unconstitutional by demonstrating that it furthers a compelling state interest and is narrowly drawn to avoid unnecessary abridgments of constitutional rights." Id. This compelling state interest test was imposed by the Hawaii Supreme Court. Baehr v.Lewin, 852 P.2d 44, 64 (Haw. 1993). The court in that case held that the marriage statute regulated access to the status of marriage on the basis of the applicant's sex, and therefore established a sex-based classification. Since sex is a suspect category for purposes of equal protection analysis under article I, § 5 of the Hawaii Constitution, the statute was to be subjected to "strict scrutiny." Once the statute was labeled as a sex-based classification and this high burden of proof was imposed on the State by the Hawaii Supreme Court, it was virtually predetermined that the statute would be stricken.Compare 1977-78 Rep. Att'y Gen. 170 (Op. No. 113, June 27, 1977) (marriage licenses are denied to two people of the same sex "because of the nature of marriage itself, not because of the fortuitous circumstances of their sex."). It is at least noteworthy, however, to consider the trial court's statement on remand that,
 Defendant (State of Hawaii) presented meager evidence with regard to the importance of the institution of traditional marriage, the benefits which that relationship provides to the community and, most importantly, the adverse effects, if any, which same-sex marriage would have on the institution of traditional marriage and how those adverse effects would impact on the community and society. The evidentiary record in this case is inadequate to thoughtfully examine and decide these significant issues.
Baehr v. Miike, 1996 WL 694235 at 19. This statement provides a road map for any other state facing similar litigation, but may also represent a criticism of the vigor with which the case was defended and/or a pointed reference to the fact that the Hawaii Supreme Court expressly refused to allow attorneys representing religious interests to present legal arguments in support of traditional marriage. Baehr v. Miike, 910 P.2d 112 (Hawaii 1996) (affirming denial of motion for leave to intervene by the Church of Jesus Christ of Latter-Day Saints and three LDS clergy members who believed the State Attorney General "might not be willing to assert at the upcoming trial all the known compelling state interests which have been determined, in other jurisdictions, to be legally sufficient to justify similar legislation [banning same-sex marriage].").
The Defense of Marriage Act
In anticipation of the Hawaii court decision mandating state approval of same-sex marriage, the United States Congress adopted the Defense of Marriage Act, Public Law 104-199 [H.R. 3396], on September 21, 1996. This Act was subsequently signed into law by President Clinton. The Defense of Marriage Act (DOMA) amends28 U.S.C. § 1738C by adding the following language: "No State . . . shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same-sex that is treated as a marriage under the laws of such other State . . ., or a right or claim arising from such relationship." DOMA also amends 1 U.S.C. § 1 by adding the following definition of "marriage" for purposes of federal law: "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife." Thus, DOMA expressly provides that Nebraska and other states are not required to recognize same-sex "marriages" from Hawaii or any other jurisdiction. However, DOMA in no way alters existing Nebraska law or that of any other jurisdiction. It simply protects those States which choose not to recognize same-sex "marriages" from other jurisdictions. Without affirmative legislation on the subject, Nebraska would most likely be subjected to litigation in an attempt to force recognition of same-sex marriage licenses issued in Hawaii.
CONCLUSION
Based upon review of the Baehr decision and the Defense of Marriage Act, the answers to your questions are as follows:
1. New legislation expressly prohibiting or excluding recognition of same-sex marriages under Nebraska law is the only certain way to avoid the possibility that Nebraska could be forced to recognize same-sex marriage licenses issued in Hawaii.
2. The Defense of Marriage Act protects any State, including Nebraska, from being forced to recognize same-sex marriages from other jurisdictions if such State does not wish to do so. However, DOMA does not alter existing State laws nor prohibit States from recognizing same-sex marriages. Given the existing uncertainty under Nebraska law, additional legislation would be required to ensure Nebraska would be protected under DOMA.
Sincerely yours,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved By:
Don Stenberg
Attorney General